## Richmond

In re JESSICA MARGARET O'NEIL

(Dennis P. O'Neil and Mary S. O'Neil, appellants,

real parties-in-interest)

No. 0563-93-2

Decided July 19, 1994

COUNSEL

Kenneth Crowder (Montia O. Givens; McGuire, Woods, Battle & Boothe, on brief), for appellants.

OPINION

**KOONTZ, J.**—Dennis P. O'Neil and Mary S. O'Neil (the O'Neils) appeal an order of the Circuit Court of Powhatan County denying their petition to be named the legal guardians of Jessica Margaret O'Neil (Jessica), their maternal granddaughter. The issue presented is the standard by which the chancellor determines the merits of the petition. We hold that in considering such a petition, the chancellor is to be guided by a determination of a result that serves the best interests of the child. In light of this holding, because the chancellor applied an incorrect standard by balancing the financial interests of the grandparents against the best interests of the child and because the record does not disclose whether all necessary parties were given notice of the proceeding, we vacate, rather than reverse, the chancellor's denial of the petition and remand the matter for further proceedings.

## I.

### FACTUAL BACKGROUND

Jessica was born January 26, 1992, the daughter of Lianne R. O'Neil and William G. Shaffer. On March 11, 1992, the Juvenile and Domestic Relations District Court of Powhatan County, responding to a petition from the O'Neils, granted joint custody of the child to them. Jessica's parents consented to this award of custody. Jessica has been in the care and control of the O'Neils from that time in Powhatan County.

On December 2, 1992, the O'Neils sought an order from the Circuit Court of Powhatan County appointing them Jessica's joint legal guardians. Their petition indicated that Jessica's mother, who was attending college, approved of her parent's actions. The chancellor appointed a guardian *ad litem* to represent Jessica's interests. In her response to the petition, the guardian *ad litem* placed Jessica's welfare in the protection of the court and did not otherwise oppose the petition.

In a hearing held February 25, 1993, Mr. O'Neil testified that he and his wife were the sole support for both Jessica and her mother. Mr. O'Neil testified that Jessica's mother lives with the O'Neils, attends college, and approved of her parent's actions in seeking legal guardianship of Jessica. It does not appear from the record that Jessica's mother attended or had notice of the hearing.

Mr. O'Neil further testified that Jessica's father provides no child support and has expressed no interest in participating in Jessica's care and upbringing. It does not appear from the record that Jessica's father either attended or had notice of the hearing. Mr. O'Neil stated that he wished to have guardianship of his granddaughter in order to facilitate her being covered under the O'Neils' medical insurance policy.

In denying the petition, the chancellor noted that the mother was not under any disability as Jessica's natural guardian. He further stated that it was not proper for the court to interfere with the parental right of guardianship in order to "relieve someone of financial difficulty."

## II.

## JURISDICTION

Before considering the substantive issue presented by this appeal, we address the basis of our jurisdiction in this matter. Two early cases in this Commonwealth confirmed the rule of chancery that, absent statutory authority, the appointment of a guardian is not subject to appellate review. *See Dupuy v. Hardaway*, 31 Va. (4 Leigh) 584, 587-88 (1833); *Ficklin v. Ficklin*, 4 Va. (2 Va. Cas.) 204, 204-05 (1820). Subsequent to these cases, the legislature empowered the Supreme Court to hear appeals of guardianship petitions. In the present Code, that authority is conferred by Code § 8.01-670, which provides in pertinent part as follows:

[e]xcept as provided by § 17-116.05, any person may present a petition for an appeal to the Supreme Court if he believes himself aggrieved . . . [b]y any judgment in a controversy concerning . . . [t]he appointment or qualification of a personal representative, guardian, committee, or curator.

Code § 8.01-670(A)(1)(d).

Code § 17-116.05(3)(e) gives jurisdiction to the Court of Appeals in "[a]ny final judgment, order, or decree of a circuit court involving . . . [t]he control or disposition of a child." Because Code § 8.01-670 clearly contemplates the Court of Appeals having initial appellate jurisdiction over at least some of the judgments listed in that section, and because guardianship is a matter

commonly involving the control or disposition of a child, we hold that these two jurisdictional statutes when read together evince a legislative intent to grant the Court of Appeals initial appellate jurisdiction in matters involving the appointment or qualification of a guardian for a minor child.

## III.

### STATUTORY GUARDIANSHIP

■ The natural guardianship of a legitimate minor child is governed by statute in this Commonwealth:

> The father and mother of every legitimate unmarried minor child, *if living together* and being themselves respectively competent to transact their own business and not otherwise unsuitable, shall be the joint natural guardians of the person of such child, with equal legal powers and equal legal rights in regard to such child; and upon the death of either parent the survivor shall be the natural guardian of the person of such child. *If either parent has abandoned his or her family, the other shall be the natural guardian of the person of such child.*

Code § 31-1 (emphasis added). The power of a circuit court to appoint a guardian of a minor child is also governed by statute. Code § 31-4. That power, which is given to both the court and the clerk, allows the court to appoint a guardian unless the minor child has a testamentary guardian.[1] The O'Neils' petition was properly before the court pursuant to the authority of Code § 31-4.

## IV.

### CUSTODY AND GUARDIANSHIP

■ Custody is broadly defined as "[t]he care, control and maintenance of a child." *Black's Law Dictionary* 347 (5th ed. 1979). A guardian is "[o]ne who legally has responsibility for the care and management of the person, or the estate, or both, of a child during

---

[1] In addition to the power granted by Code § 31-4, the circuit court has the equitable power to appoint a guardian of a minor child in other circumstances. *Durrett v. Davis*, 65 Va. (24 Gratt.) 302, 315 (1874); *see also Buchanan v. Buchanan*, 170 Va. 458, 473-74, 197 S.E. 426, 433 (1938) (the court of chancery, as representing the parental and protecting power of the Commonwealth, has jurisdiction to determine controversies concerning the guardianship of a minor).

its minority." *Id.* at 635.

In this Commonwealth, "legal custody" is defined as "the right to have physical [charge] of the child, to determine and re-determine where and with whom [the child] shall live, the right and duty to protect, train and discipline [the child] and to provide [the child] with food, shelter, education and ordinary medical care, all subject to any residual parental rights and responsibilities."[2] Code § 16.1-228. The term "guardian" is not defined by any statute in this Commonwealth, nor does any statute or court decision in this Commonwealth adequately distinguish guardianship and custody, although it is certain that there is a distinction between the two. *See, e.g.,* Code § 16.1-228 (nominating without distinguishing "parent," "guardian" and "legal custodian" as separate entities and defining "residual parental rights and responsibilities as those remaining with the parent after the transfer of "legal custody or guardianship").

The distinction we draw between "legal custody" and "guardianship" is a reflection of the extent of the power over and the responsibility to the child involved in each. Thus, in this Commonwealth, legal custody is the right to have physical charge of the child and generally direct the day-to-day activities of the child's life. Guardianship of the person and estate of a child, by contrast, is a broader power to have the custody of the ward *and* the right to take possession of the ward's estate, real and personal, and out of the proceeds of such estate provide for the ward's maintenance and education. *See* Code § 31-8. Additionally, the legal custodian, while being required to provide the ordinary necessities of daily life for the child, is not a fiduciary or guarantor of the child. Rather, it is the guardian of the person and estate who carries the burden of managing the ward's estate and making good the lawful debts of his ward.[3]

---

[2] In other jurisdictions, guardianship, rather than custody, is the preferred status for an individual authorizing medical procedures, enrolling the child in public school, or seeking eligibility for public assistance for the child. Accordingly, petitions for "letters of guardianship" are more familiar in those jurisdictions. *See, e.g.,* Joseph R. Carrieri, *The Legal Handbook of Foster Care, Termination of Parental Rights and Adoptions* (1993).

[3] If the ward's estate is insufficient to cover those debts, the guardian is not bound to cover those debts out of his own resources unless he consents to be so bound. *Barnum v. Frost,* 58 Va. (17 Gratt.) 398, 407 (1867). On the record here, it appears that the O'Neils were willing to assume responsibility for Jessica's debts; moreover, the chancellor could require their consent to be so bound as a condition of granting the petition.

## V.

## CONSENSUAL TRANSFER OF GUARDIANSHIP

Upon the consent of Jessica's parents, the juvenile court in an earlier proceeding awarded custody of the child to the O'Neils, the maternal grandparents of the child. The juvenile court's order could not have appointed the O'Neils guardians of the person or estate of the child because jurisdiction to make such appointments is vested in the circuit courts. Code § 31-4.

█ The O'Neils, who have legal custody of the child, sought to obtain an order in the circuit court appointing them guardians of the person of the child. It does not appear from the petition that the O'Neils were seeking guardianship of the child's estate. Although our statutes do not define the term "guardian," implicit in the statutes is a recognition that a guardian is a person who has either "the custody and control of the estate" of a minor or "the custody of the person" of a minor, Code § 31-2, or both. Code § 31-8. *Cf.* Code § 37.1-128.1(A) (guardian for a mentally incapacitated person shall be "the guardian of his person or property, or both"). Because the O'Neils had legal custody of the child, we hold that the chancellor's consideration of such a petition is limited to a determination of whether the transfer is in the best interests of the child, and the chancellor should deny such a petition only where it appears from the record that the transfer of guardianship of the person would be detrimental to the best interests of the child. Where it appears that the parties are attempting to accomplish some fraud or abuse of the power of guardianship, the transfer is not in the best interests of the child. *See, e.g., In re Harp*, 495 P.2d 1059, 1062 (Wash. Ct. App. 1972) (where father of illegitimate children sought guardianship in order to control mother's use of child support, the transfer was properly denied). Additionally, the chancellor, in determining the best interests of the child, may decline to award guardianship to any person deemed by him to be incompetent to discharge the duties of that office. *Cf.* Code § 31-5.

## VI.

## THE O'NEILS' PETITION

When the Juvenile and Domestic Relations District Court awarded the legal custody of Jessica to her grandparents, in addi-

tion to the other rights and obligations bestowed upon them, they became obligated to provide her with "ordinary medical care." Code § 16.1-228. Because the statutory definition of legal custody in this Commonwealth includes the power to direct medical care, legal guardianship of the person was not a necessary legal status for the O'Neils to obtain to direct such care for Jessica. However, the status of legal custodian does not require a non-governmental entity such as the O'Neils' insurance carrier, to recognize the O'Neils' financial responsibility for Jessica's medical care. Here, the record establishes that their insurance carrier declined to recognize the child as an insured person until the O'Neils obtained the status of legal guardians of the person in order to comply with their contract of coverage.

The O'Neils' petition sought to have the chancellor exercise his original chancery jurisdiction to award the legal guardianship of Jessica to the O'Neils to satisfy the requirements of their medical insurance contract. Clearly, the best interests of the child would be served by granting the requested guardianship in order that she might obtain the benefit of medical coverage under that contract. Nothing in the record suggests that the parties were attempting to accomplish some fraud, abuse the power of guardianship, or that the O'Neils would be incompetent to discharge the duties of legal guardians of the person of the child. Moreover, where it is established that the petition seeking legal guardianship of the person of a minor child is unopposed by the child's natural guardian(s) and occurs subsequent to or contemporaneously with a voluntary temporary transfer of custody to the prospective legal guardian of the person of the child, the chancellor, in determining whether to grant the petition, applies an incorrect standard by balancing a potential financial benefit to the prospective legal guardian of the person against the best interests of the child. Thus, the chancellor applied an incorrect standard in denying the O'Neils' petition.

## VII.

### NOTICE TO INTERESTED PARTIES REQUIRED

The record in this case does not reflect that the child's parents were present at the February 25, 1993 hearing before the chancellor on the O'Neils' petition. Moreover, the record does not adequately disclose that notice of the proceeding had been given to them. Although Title 31 contains no specific requirement for

notice in such cases, we believe reasonable notice is required.

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance. . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Oak Hill Nursing Home, Inc. v. Back*, 221 Va. 411, 417, 270 S.E.2d 723, 726 (1980) (citations omitted). Accordingly, we hold that reasonable notice to all interested parties is required in a proceeding involving a private petition for the transfer of guardianship of a minor child to protect the rights of such parties and to ensure the best interest of the child.

Here, the result obtained did not prejudice parental rights and interests. However, because we hold that the chancellor applied an improper standard and vacate his order, we direct that on remand reasonable notice be given to all interested parties. *See Jeffries v. Jeffries*, 123 Va. 147, 155, 96 S.E. 197, 199 (1918).

For these reasons, we vacate the chancellor's order and remand this case for further proceedings consistent with this opinion after reasonable notice to all interested parties.

*Vacated and remanded.*

Benton, J., and Elder, J., concurred.