# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

 v.

Royale Lee Stewart

October 17, 2000

Case No CR9501113/F97

BY JUDGE JOSEPH A. LEAFE

This matter comes before the Court on Defendant Royale Stewart's Motion to Set Aside His Conviction for Lack of Subject Matter Jurisdiction. On or about February 24, 1995, Royale Stewart was charged with four counts including one count of capital murder, one count of attempted robbery, one count of use of a firearm in the commission of capital murder, and one count of use of a firearm in the commission of attempted robbery. Defendant was a juvenile at the time of the offense. He was later transferred to the Circuit Court of the City of Norfolk where he was indicted. The transfer order contained the boiler-plate language that the juvenile's parents were notified in accordance with Virginia Code §§ 16.1-263 and 16.1-264. Stewart pleaded not guilty to all charges. The case was tried to a jury, and, on July 16, 1996, the jury convicted defendant of all counts. All of defendant's appeals and habeas petitions have been denied.

In defendant's original pre-sentence report, it was noted that defendant was born to his mother, Barbara Stewart Wilson, and his claimed biological father, Stanley Warren. The probation officer stated in this report that Stanley Warren (the purported father) "is last reported to have lived in Norfolk." The defendant stated that he had not had contact with his father since he was about eight years old. The defendant was raised by his maternal great-grandmother,

Mary Stewart, from age four to thirteen. Mary Stewart became defendant's legal guardian sometime around 1979-80 and was his legal guardian until 1991 when she petitioned the juvenile court to have custody returned to the mother. No biological father was mentioned in these proceedings. The mother was awarded sole custody on June 11, 1991. In the great-grandmother's affidavit prior to the award of custody she stated that she did "not know of any person who is not already named as a party in this proceeding [the custody proceeding] who has physical custody of this child or who claims to have custody or visitation rights with respect to this child." *See* Mary Stewart's Affidavit, May 20, 1991. The custody/visitation order also stated that notice had been given to all necessary and proper parties.

Defendant has now brought a motion to set aside his conviction for lack of jurisdiction of this Court. He bases the motion on *Baker v. Commonwealth*, 28 Va. App. 306, 504 S.E.2d 394 (1998), aff'd, *Commonwealth v. Baker*, 258 Va. 1, 516 S.E.2d 219 (1999). Defendant asserts that, upon his transfer to Circuit Court, his mother and great-grandmother received notice of the initiation of the juvenile proceedings but his biological father did not, nor was there any certification on the record that the biological father was not reasonably ascertainable.

This Court ruled in *Darrell Dewon Jones v. Commonwealth* that the conviction rendered in the Norfolk Circuit Court was void as the Court never acquired subject matter jurisdiction over the charges against Jones. The father of defendant Jones was not mentioned in the record, and there was no certification on the record that he was not reasonably ascertainable. This Court reluctantly held that the conviction was void based on the facts of the case and legal precedent including *Baker, supra*; *Karim v. Commonwealth*, 22 Va. App. 767, 473 S.E.2d 103 (1996); and *Williams v. Commonwealth*, 26 Va. App. 776, 497 S.E.2d 156 (1998). The case at bar is distinguishable from *Jones* in two important respects, and the facts of this case do not mandate the same result.

The first aspect which distinguishes this case from *Jones* is the history of proceedings regarding the defendant and his family. The Commonwealth argues that since the mother alone was given full custody of defendant in 1991 after the great-grandmother had been his legal guardian, there was no other "parent" or person standing "*in loco parentis*" in this case that needed to be notified. The Juvenile and Domestic Relations Court had affirmatively recognized Barbara Wilson (mother) as defendant's legal custodian and parent in 1991. The language of § 16.1-263 at the relevant time read as follows:

After a petition has been filed, the court shall direct the issuance of summonses, one directed to the child, if the child is twelve or more years of age, and another to the parents, guardian, legal custodian or other person standing *in loco parentis*, and other such persons as appear to the court to be proper.

The Commonwealth cites to *Thomas v. Garraghty*, a death penalty case in which the defendant's *Baker* appeal was denied. 258 Va. 530, 522 S.E.2d 865 (1999). In *Thomas*, defendant was convicted of capital murder (along with other offenses) and was sentenced to death. He was seventeen at the time of these offenses. Defendant Thomas filed a petition for a writ of habeas corpus alleging that his biological father was not notified of the juvenile proceedings and therefore his subsequent transfer and conviction were void based on the holding in *Baker*. *Id*. at 532. The biological mother, his aunt, and his uncle were all notified and at the time of the proceedings the defendant was living with his aunt and uncle. *Id*. Defendant's maternal grandparents had adopted defendant and the biological mother and father both consented to it. *Id*. at 533. On the consent forms, it stated that, in the event that both grandparents die, his natural mother would have sole custody. *Id*. Based on these consent forms, defendant contended that after both grandparents died, his mother and father became his "parents" again and both were entitled to notice under the statute. The Court disagreed and found no merit in his contention.

The Court held that the statute's requirements had been fully complied with because at the time, "he had no parents, guardian, or legal custodian." *Id*. at 535. The final adoption order entered in 1982 "divested Thomas's biological parents of all legal rights and obligations with respect to him." *Id*. Thus, Thomas's biological father was not his "parent" within the meaning of statute at issue. *Id*. The Court further held that defendant's aunt and uncle were persons "standing *in loco parentis*" and since they and defendant were served with process, the notice requirements were satisfied. *Id*. Finally, in a footnote the Court stated: "we reject Thomas's additional argument that because the transfer petitions listed Robert Thomas as the defendant's father, the Commonwealth should be barred from asserting that [he] was not the defendant's parent at the time of the transfer proceedings. The terms 'father' and 'parent' are not synonymous under the facts of this case." *Id*. at 536. It is important to note that the Court actually stated that his aunt and uncle were the ones who needed to be notified since they were standing *in loco parentis*.

In the case at bar, adoption is not the issue but legal guardianship and custody is. Generally, the father and mother of a minor child, if living

together, are the joint natural guardians with equal powers and rights. *See* Virginia Code § 31-1. If either parent has abandoned his or her family, the other shall be the natural guardian. *Id.* Further the Court may appoint a guardian upon a petition if not contested by the natural guardians. Va. Code § 31-4. The Code does not define the term "guardian" but implicit in the statute is a recognition that a guardian is one who has either physical custody and control of the minor, the minor's estate, or both. *See In re O'Neil*, 18 Va. App. 674, 446 S.E.2d 475 (1994). The distinction between legal custody and legal guardianship is the amount of power and responsibility over the child. Legal custody is defined as the "right to have physical charge of the child, to determine and re-determine where and with whom the child shall live, the right and duty to protect, train and discipline, and to provide with food, shelter, education . . . all subject to any residual parental rights and responsibilities." *Id.* at 478. "Guardianship . . . is a broader power, to have the custody of the ward and the right to take possession of the ward's estate . . . ." *Id.* In the case at bar, the fact that the great-grandmother was defendant's legal guardian for eleven plus years is significant as no court can make such an appointment without notifying all interested parties. *Id.* This Court assumes that the biological father was in fact notified regarding this proceeding and he did not contest or appear in the matter.

The great-grandmother later petitioned the Court in 1991 to have legal custody returned to the biological mother. In awarding custody, the Court considers different factors in order to determine where the child would best be suited. The Court may revise and alter any prior decrees concerning the custody and care of a child and may, even upon its own motion, make a new decree. Virginia Code § 20-108. When ordering a change of custody, the best interests of the child controls the issue. *Id.*; *Simmons v. Simmons*, 1 Va. App. 358, 339 S.E.2d 198 (1986); *see also Brown v. Brown*, 30 Va. App. 532, 518 S.E.2d 336 (1999). The court may award joint custody or sole custody in keeping with the child's best interests. Virginia Code § 20-124.2(A), (B). Factors to consider in determining the best interests of the child include the age and physical/mental condition of the child and each parent, the needs of the child, the relationship existing between each parent and child, the role which each parent has played and will play in the future in the care of the child and others. Virginia Code § 20-124.3. "Sole custody" is defined as that one person who retains responsibility for the care and control of the child and has primary authority to make decisions concerning the child. Virginia Code § 20-124.1. In the case at bar, sole custody was awarded to the biological mother in 1991.

This case is analogous to *Thomas v. Garraghty, supra*. The legal action in granting the mother sole custody is certainly significant as showing that the biological father may not have been in existence at the time of the charges in this matter for the Juvenile Court to consider. The facts of this case are such that the juvenile and domestic relations court had numerous dealings with the defendant to the point where the juvenile judge had personal knowledge of defendant's family situation. The records of defendant's thirty-seven prior matters before the juvenile court are silent as to any appearance by the biological father. The case at bar represented defendant's 38th to 41st charges in the Norfolk Juvenile Court. The court had consistently recognized Barbara Wilson as defendant's legal custodian and parent. She was summonsed and present at the transfer hearing. The great-grandmother, defendant's legal guardian prior to 1991, was also summonsed and present at the transfer hearing. The Court finds that the mother is the only person who can be said to be a parent or person standing *in loco parentis* under the Statute. Therefore, this case is separated from other *Baker* cases.

Under the facts in *Baker*, there was a substance abuse evaluation where defendant Baker described the relationship between him and his biological father as "I don't have one." *See Baker, supra* at 395-96. However, in a psychological evaluation, it was noted that Baker had recent contact with his biological father. They also knew who the father actually was. In *Karim*, the Court did make an inquiry as to the defendant's parent's whereabouts. The "record clearly showed that at the initiation of the proceeding . . . the juvenile judge knew Karim's father's Maryland address and knew that the father had recently visited his son in jail. The juvenile judge had evidence that Karim's stepmother was his guardian and knew her Virginia address. Despite having this information, the juvenile judge failed to give notice to the father or stepmother, but instead determined probable cause and ordered a transfer report." *Karim*, 22 Va. App. 767, 473 S.E.2d 103, 108 (1996). In *Darrell Jones* there was an affidavit signed by the named biological father that contradicted the transfer order's recitation that proper notice was given. In the case at bar, none of these facts are present.

While not necessary for this decision, the Court will address briefly the second aspect which distinguishes this case from *Jones*. The Commonwealth argues that the defendant has the burden to plead sufficient facts and he has not met that burden in this case. The defendant has the burden of establishing the invalidity and voidness of the judgment. *Winston v. Commonwealth*, 26 Va. App. 746, 752, 497 S.E.2d 141 (1998). A criminal conviction is void if it has been entered by a court that did not have subject matter jurisdiction over the charge. *Winston, supra* at 144. A void criminal conviction may be attacked

collaterally or directly in any court at any time. *Id.* However, "the party asserting that a judgment is void for lack of subject matter jurisdiction has the burden of proving that fact." *Id.*

Here, defendant has not provided the Court with any documentation as to the alleged father's actual existence at the initiation of the proceedings in juvenile court or any sworn statement in the form of an affidavit by the father stating that he was the natural father and that he had not been notified. The Court does not know the name of the biological father.

As stated above, in *Jones*, there was a signed affidavit by the defendant's biological father, whose name was in the accompanying motion, stating that he never received notice. An affidavit is a sworn statement. This was an important fact in deciding *Jones* because the Court was then able to determine that the man was sworn to be the biological father and did not in fact receive notice. It also showed that the father was willing to support his son and perhaps would have been a part of the proceedings had he been notified. The primary purpose and goal behind these notice requirements in the initiation of proceedings is to protect the juvenile from the critically important decision of trying the juvenile as an adult. *Kent v. United States*, 383 U.S. 541 (1966).

In the case at bar, there is no affidavit signed by the biological father and there is no other documentation that may suggest who the biological father actually is or whether he ever received any notice or lack thereof. Defendant's motion to set aside the conviction states "the defendant's [juvenile] biological father was not notified;" and that "there was no attempt to give the defendant's father notice." There is no name of the father, no address, or anything else in defendant's motion to give some indication that setting aside the conviction is the appropriate and just response.

For the reasons stated herein, defendant's Motion to Set Aside His Conviction is overruled.