COURT OF APPEALS OF VIRGINIA

Present:   Judges Callins, White and Bernhard
Argued at Williamsburg, Virginia


J.K., BY HIS PARENTS/NEXT FRIENDS,
 MONTE AND GINGER KULIGOWSKI

v.      Record No. 1427-24-1

TRUSTGARD INSURANCE COMPANY

MEMORANDUM OPINION[*] BY
JUDGE DAVID BERNHARD
NOVEMBER 5, 2025

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Tonya Henderson-Stith, Judge

Monte E. Kuligowski (Monte E. Kuligowski, P.C., on briefs), for
appellant.

(Barrett Enix; Michael L. AtLee, Guardian ad litem for the infant
child; Kalbaugh, Pfund & Messersmith, P.C.; Hall, Fox, and
AtLee, P.C., on brief), for appellee.  Appellee and Guardian ad
litem submitting on brief.


This appeal presents the question of first impression whether parents possess a

fundamental constitutional right to control the personal injury settlement proceeds of their minor

child, free from judicial oversight.  This Court holds, they do not.

The case arises from the Circuit Court of the City of Hampton's order approving a

compromise settlement for J.K., a minor, and directing that the settlement funds be held by the

clerk of the court until J.K. reaches the age of majority.  Monte and Ginger Kuligowski ("the

parents")[1] argue that Code § 8.01-424 unconstitutionally infringes upon their fundamental right,

as fit parents, to manage their child's settlement proceeds absent a finding of unfitness.

_____

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Monte Kuligowski ("counsel"), an attorney, appears before this Court representing the
parents in this appeal.

Although the parental rights recognized in *Troxel v. Granville*, 530 U.S. 57 (2000), and in Code § 1-240.1 extend to a child's upbringing, education, and care, they do not include control of settlement proceeds free from court oversight. By conflating these distinct areas, the parents assert a novel right unsupported by precedent or statute. Because no fundamental right is implicated, strict scrutiny does not apply. Instead, under rational basis review, Code § 8.01-424 readily withstands constitutional scrutiny. The statute reflects the Commonwealth's longstanding parens patriae authority to protect minors, whose legal disabilities prevent them from safeguarding their own property. It grants courts discretion to preserve settlement funds in neutral custody until majority, ensuring that such funds are neither dissipated nor mismanaged. Code § 8.01-424 therefore does not infringe on parental liberty but rather represents the Commonwealth's measured protective role toward minors.

Finding no constitutional infirmity and no abuse of discretion in the application of the statute, this Court affirms the judgment of the circuit court.

BACKGROUND

On August 21, 2022, J.K. and his father sustained life-threatening injuries in an automobile accident, when one of two drivers racing against each other, lost control, hit a curb, and collided with father's vehicle. The drivers were uninsured. The parents filed a claim under their uninsured/underinsured motorist policy issued by Trustgard Insurance Company ("Trustgard"). The parties exchanged no offers or counteroffers, and the parents did not file suit. Trustgard agreed to pay the full policy limits to J.K., totaling $250,000.

Trustgard then petitioned the court to approve the compromise settlement pursuant to Code § 8.01-424, and a guardian ad litem was appointed. At the ensuing May 28, 2024 hearing, the

parents expressed their desire, as noted in the petition,[2] to invest the settlement amount into a certificate of deposit ("CD") minor trust account for J.K. Counsel proffered that "CD interest rates had been fluctuating from 4.5% APR to over 5% APR, for quite some time. At 5% APR, the funds (if disbursed immediately) would have already earned $22,810.97 for [J.K.'s] benefit as of the court hearing date."

Counsel argued that fit parents have a fundamental right to manage the financial affairs of their children unless such rights are waived or lost. The record[3] references that the parents "presented themselves as fit parents . . . unified in their fundamental liberty interest, [and] without objection by counsel or the court." The court reserved its ruling on the distribution of the settlement proceeds. Counsel filed a supporting brief "to assist the court in understanding the constitutionality of § 8.01-424(E)."[4]

On July 2, 2024, the trial court delivered an oral ruling, approving the infant settlement and ordering that the proceeds be paid to the Clerk of the Circuit Court of the City of Hampton, to be held for J.K. until his 18th birthday. Counsel objected, renewing his constitutional challenge. The court held that § 8.01-424(E) was not "overly broad" and that its ruling was in J.K.'s "best interests." The trial court issued a final order on July 26, 2024, wherein it noted that the parents presented no proposals for a structured settlement or other trust account, available options under Code §§ 8.01-424 and 8.01-600. The parents appealed.

---

[2] Under the petition, the settlement proceeds would have been distributed to J.K.'s father "to deposit in an interest-bearing CD account in [J.K.'s] name established with Chartway Federal Credit Union."

[3] Monte Kuligowski submitted, and the court accepted, a written statement of facts in lieu of a transcript on October 7, 2024.

[4] Counsel argued that Code § 8.01-424(E) is unconstitutional because it authorizes courts to manage the settlement funds awarded to a child, over the judgment of the parents, without consideration of whether the fundamental rights of the parents are intact.

ANALYSIS

The parents contend that Code § 8.01-424 is unconstitutional, both facially and as applied, because it infringes upon a fundamental constitutional right. Their description of the asserted right, however, has shifted across their filings. Before the circuit court, the parents maintained they "have the fundamental right to make the decision of how to best invest the payment at hand for the benefit of their child without a court deciding for them." In their opening brief, they state that "[p]arents have a fundamental liberty interest to manage the financial affairs of their children." In their reply brief, they argue "that fit parents have a fundamental right to manage the property of their minor child." This Court evaluates the assertion that parents have a fundamental right to manage the settlement proceeds (property) belonging to their minor child.

Questions of statutory constitutionality are reviewed de novo. *Toghill v. Commonwealth*, 289 Va. 220, 227 (2015). "[I]f a statute is constitutional as applied to a litigant, he or she lacks standing to assert a facial constitutional challenge . . . because it has at least one constitutional application." *Id.* at 228. "All actions of the General Assembly are presumed to be constitutional." *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 52 (1990). "Thus, courts will declare an enactment unconstitutional only when it clearly is repugnant to some provision of either the state or federal constitution." *Id.* at 52-53. Contrary to the position of the parents that the circuit court had the duty to first make a determination of parental fitness to apply the statute constitutionally, "[t]he part[ies] challenging the enactment [have] the burden of proving its unconstitutionality, and if a reasonable doubt exists as to its constitutionality, the doubt must be resolved in favor of its validity." *Id.* at 53; *Woolfolk v. Commonwealth*, 18 Va. App. 840, 848 (1994) ("The burden is on the challenger to prove the alleged constitutional defect.").

By default, enactments are judged under the rational basis standard. *Hess*, 240 Va. at 53. Thus, generally, a statute satisfies due process if it "[bears] a reasonable relation to a proper purpose

- 4 -

[that is] neither arbitrary nor discriminatory." *Etheridge v. Medical Ctr. Hosps.*, 237 Va. 87, 97 (1989).  When, however, a statute affects a fundamental right, it is accorded strict scrutiny review. *Hess*, 240 Va. at 53.  Then, the statutory regulations limiting such right must be necessary and narrowly tailored to promote a compelling state interest.  *Williams v. Williams*, 24 Va. App. 778, 782 (1997).

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The text of Virginia's Due Process Clause is nearly identical.  Va. Const. art. I, § 11 ("[No] person shall be deprived of his life, liberty, or property without due process of law.").  "While the [federal] Constitution does not specifically mention parental rights, the Constitution's guarantee of liberty has been repeatedly interpreted as encompassing such a right."  *Williams*, 24 Va. App. at 782.  "Because the rights guaranteed by the [federal and state Constitutions] are co-extensive," this Court applies the same due process analysis; that is, "if [the enactment] does not offend the Federal Constitution, then it will not offend the Virginia Constitution."  *Paris v. Commonwealth*, 35 Va. App. 377, 382-83 (2001).

The parents maintain that their claimed right is consistent with the parental fundamental rights identified in certain United States Supreme Court decisions and codified at Code § 1-240.1.  Their opening brief states:

> This Court in *Bedell v. Price*, 70 Va. App. 497, 504-505 (2019), recently affirmed one of the bedrocks of U.S. law: "'*[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by'* the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion); *see also* Code § 1-240.1.  '[T]he custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)."

Virginia Code Section 1-240.1 codifies and encapsulates in one sentence the United States Supreme Court doctrine on the fundamental liberty interest of parents. The code section is titled, "Rights of parents," and it reads: "A parent has a fundamental right to make decisions concerning the upbringing, education, and care of the parent's child."

(Emphasis added).

After careful review, this Court concludes that the right asserted here, parental control over a child's settlement proceeds, is neither fundamental nor specially protected. The federal Due Process Clause is silent on the rights of parents, and thus, this Court considers the U.S. Supreme Court's construction of substantive due process. The parents cite no precedential authority explicitly recognizing a parent's *fundamental* right to manage the property of their child. Instead, they submit more generally that the "interest of parents in the care, custody, and control of their children" encompasses the asserted right. *Troxel*, 530 U.S. at 65.

In *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), the Court held that liberty includes a parent's right to establish a home, bring up children, and direct a child's education. Two years later, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35 (1925), the Court reaffirmed the right of parents "to direct the upbringing and education of children under their control." Further, in *Prince*, 321 U.S. at 166, the Court emphasized that "custody, care and nurture of the child reside first in the parents." These cases were later echoed in *Troxel*, with the Supreme Court adding, "[i]n subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." 530 U.S. at 65-66; *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Parham v. J. R.*, 442 U.S. 584, 602 (1979); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

- 6 -

This Court concludes that the cited cases recognize and protect the right of parents, whether single, married, widowed, or divorced, to raise their children free from unwarranted state interference. The circumstances in which this right has been invoked—custody, adoption, nonparental visitation, education, religion, and termination of parental rights—underscore both the significance of the parent-child relationship and the primary role of parents in directing a child's upbringing and education. None of these authorities, however, establishes a fundamental right to control a child's property. Accordingly, contrary to the parents' position, no fundamental right is implicated under either the federal or state Constitutions.

The parents also contend Code § 8.01-424 "violates," that is, conflicts with Code § 1-240.1, which recognizes a "[parent's] fundamental right to make decisions concerning the upbringing, education, and care of the parent's child." This argument is unavailing. Considering its plain language, the statute neither extends nor purports to extend to parents an exclusive right to oversee a child's property. The intent of the General Assembly is clearly discernable. Chapter 668 in the 2013 Acts of Assembly states, "[t]hat it is the expressed intent of the General Assembly that [§ 1-240.1] codify the opinion of the Supreme Court of Virginia in *L.F. v. Breit*, issued on January 10, 2013, as it relates to parental rights." The relevant section of that decision states:

> The relationship between a parent and child is a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Wyatt v. McDermott*, 283 Va. 685, 692 (2012) ("*We recognize the essential value of protecting a parent's right to form a relationship with his or her child.*"); *Copeland [v. Todd]*, 282 Va. [183,] 198 [(2011)]. Indeed, the Supreme Court of the United States has characterized *a parent's right to raise his or her child* as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel*, 530 U.S. at 65. Any statute that seeks to interfere with a parent's fundamental rights survives constitutional scrutiny only if it is narrowly tailored to serve a compelling state interest. *McCabe v. Commonwealth*, 274 Va. 558, 563 (2007); *see also Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

*L.F. v. Breit*, 285 Va. 163, 182 (2013) (emphases added).  In effect, the decision reinforces the U.S. Supreme Court's conception of fundamental parental rights.  As explained above, federal precedent does not recognize as fundamental a parent's right to manage the property of a minor child.  Thus, this Court holds the same is true under Code § 1-240.1.  Significantly, Virginia caselaw reflects the well-settled principle that a child's property is a legally separate interest from that of the parents.  *See In re O'Neil*, 18 Va. App. 674 (1994).  Because no fundamental right is affected here, strict scrutiny review of Code § 8.01-424 is not mandated.  The inquiry, however, does not end there.  The statute must nonetheless withstand rational basis review, i.e., bearing a reasonable relation to a proper purpose, to survive a due process challenge.  *See Etheridge*, 237 Va. at 94.  Therefore, this Court addresses the applicable principles in turn.

Respecting the first prong of the rational basis test, whether the statute serves a legitimate purpose in authorizing the circuit court to supervise the disposition of a minor's personal injury settlement proceeds, the parents advanced no arguments concerning the state's interest in that context.  At oral argument, they instead acknowledged only the state's right to *approve* infant settlement agreements and further agreed they do not challenge that authority on appeal.  They explained that "when the minor reaches the age of majority, that agreement can be challenged and set aside by the minor," making it "perfectly understandable that insurance companies would want to get court approval of an actual settlement."  At the same time, they maintained "the child has a fundamental right to have their parents *manage* their property and not the state where it currently is."  (Emphasis added).  They asserted that "controlling assets over the objections of fit parents in agreement who claim their fundamental rights, therein lies the problem."  Though the parents' statements at the hearing do not make entirely clear whether their averred challenge was facial as to the portion of the statute governing the disposition of proceeds after approval, they consistently maintained that the statute was applied to them unconstitutionally.

- 8 -

In light of these arguments and the briefs of the parties, this Court addresses Trustgard's assertion that the state has a compelling, and therefore legitimate, interest "safeguarding and promoting the best interests of its children," in determining the circuit court's authority to manage the proceeds of an approved infant settlement. *See, e.g.*, *A.P.G. v. Fisher-Price, Inc.*, No. 3:22cv112, slip op. at 8, 2023 U.S. Dist. LEXIS 117193, at \*11 (E.D. Va. July 7, 2023) ("The [U.S.] Supreme Court has held that 'safeguarding the physical and psychological well-being of a minor' constitutes a compelling state interest." (quoting *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 607 (1982))). On several occasions, the U.S. Supreme Court has credited the State's long-recognized interests as parens patriae, often in balance with the parent's interests in a child. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 317 (1993) (O'Connor, J., concurring) (custody) ("We recognized that children 'are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae*.'" (quoting *Schall v. Martin*, 467 U.S. 253, 265 (1984))); *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) (termination of parental rights) ("Two state interests are at stake in parent rights termination proceedings--a *parens patriae* interest *in preserving and promoting the welfare of the child* and . . . [the] administrative interest in reducing the cost and burden of such proceedings." (emphasis added)); *Parham*, 442 U.S. at 605 (recognizing the "*parens patriae* interest in helping parents care for the mental health of their children"); *Prince*, 321 U.S. at 166 ("Acting to guard the general interest in youth's well[-]being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways." (footnotes omitted)).

Likewise, Virginia precedent has affirmed the state's role in protecting minor children as parens patriae, as well as the powers conferred upon the courts to enforce this role. *See Willis v. Gamez*, 20 Va. App. 75, 81-82 (1995). In *Verrocchio v. Verrocchio*, 16 Va. App. 314 (1993), this Court stated:

In Virginia, the courts of chancery represent "'the parental and protecting power of the Commonwealth,'" *Buchanan v. Buchanan*, 174 Va. 255, 273 (1940) (quoting 1 Minor's Institutes 432 (1876)), and absent a specific statute to the contrary, such courts "have succeeded to the powers . . . of the English chancery court." *Massanetta Springs Summer Bible Conference Encampment v. Keezell*, 161 Va. 532, 542 (1933). "It appears well settled that courts having historic chancery or equity jurisdiction exercise and control the sovereign power called *parens patriae*." *Matter of Baby M.*, 525 A.2d 1128, 1133 (N.J. Super. Ct. Ch. Div. 1987), *aff'd in part*, 537 A.2d 1227 (1988); *accord New York Life Ins. Co. v. Bangs*, 103 U.S. 435, 438 (1880). . . .

The common law doctrine of parens patriae is defined as that power of the Commonwealth to watch over the interests of those who are incapable of protecting themselves. *State v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971). In child custody cases, the equitable nature of this doctrine focuses the power of the court on the best interests of the child. "*In all suits or legal proceedings, of whatever nature, in which the . . . rights of a minor are involved, the protective powers of a court of chancery may be invoked whenever it becomes necessary to fully protect such rights.*" *Stewart v. Superior Court*, 787 P.2d 126, 129 (Ariz. 1989).

*Id.* at 318-19 (first and third alterations in original) (emphasis added).[5] The state's parens patriae interest is implicated in all matters of a child's welfare. Courts maintain discretion to protect a child's interests, unless constrained by statutory and constitutional limitations.[6] *Farley v. Farley*, 9 Va. App. 326, 328 (1990).

---

[5] "The merger of common-law and equity procedure in Virginia has proceeded incrementally over a long period of time." W. Hamilton Bryson, *The Merger of Common-Law and Equity Pleading in Virginia*, 41 U. Rich. L. Rev. 77, 78 (2006). In 2006, this legal evolution culminated in "a merged system whereby common-law and equity claims are pleaded the same way in a single method of pleading, whether the plaintiff has a common-law right or an equitable one or both." *Id.* Thus, circuit courts no longer preside separately over law or chancery dockets but consider legal and equitable claims in a merged procedural setting.

[6] As an example, the Supreme Court of Virginia in *In re Woodley*, 290 Va. 482, 489 (2015), reversed a trial court's decision ordering payment of the minors' wrongful death awards to the clerk of court over the objection of the decedent's personal representatives, the parents of the children. The Court held that the trial court had "no authority to disregard the statutory command [in Code § 8.01-54(C)] directing that the award 'shall be paid' to the personal representatives." *Id.* Notably, it found that the statute already contemplated protections in cases

- 10 -

A number of Virginia statutes affirm the role of the courts, in their parens patriae capacity, in safeguarding a child's property. *See, e.g.*, Code § 64.2-1801 (to distribute the income or corpus of a minor's estate, a court must find the parent unable or not required to support the minor); Code § 64.2-1702 (circuit courts may appoint a guardian ad litem for the estate of a minor); Code § 8.01-76 ("The proceeds of sale, or rents, income, or royalties, arising from the sale or lease, or other disposition, of lands of persons under a disability, . . . shall be invested under the direction of the court for the use and benefit of the persons entitled to the estate. . . . The court shall take ample security for all investments so made, and from time to time require additional security, if necessary, and make any proper order for the faithful application and safe investment of the fund, and for the management and preservation of any properties or securities in which the same has been invested, and for the protection of the rights of all persons interested therein."). Virginia's general public policy to empower the exercise of

---

involving minors. *Id.* at 487 ("These statutory provisions presuppose that the personal representative who receives and distributes the award does so in his capacity as a fiduciary representing the interests of the beneficiaries."). The opinion further states:

> The presence of specific authorization for court review and approval of wrongful death settlements involving minors contrasts sharply with the absence of any such authority over the distribution of wrongful death awards to minors. The reason for this could be quite simple. In some cases, like the present one, the personal representatives (parents of the deceased child) are themselves statutory beneficiaries. Allowing them to have unreviewable power to structure a global settlement on behalf of all beneficiaries (which is the norm in this type of litigation) would place their personal interests in conflict with the interests of the minor beneficiaries. No such potential conflicts of interest exist, however, when a judge or jury decides by verdict the specific amounts awarded to each statutory beneficiary.

*Id.* at 490 (footnote omitted). This supports the notion that a child's financial interests are standalone interests and reinforces the state's power to protect such interests.

appropriate court oversight in matters where the property of children comes under the purview of the courts is evident from these statutes.

Similarly, and persuasively, in *Blackwell ex rel. Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624 (Tenn. Ct. App. 2017), the Court of Appeals of Tennessee discussed a Tennessee Supreme Court opinion emphasizing the source of the authority of the courts to approve settlements made on behalf of minors: "From *Wright*, we can glean that Tennessee's public policy includes a well-settled principle requiring courts to act as *parens patriae* to protect a child's financial interests." *Id.* at 649 (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166 (Tenn. 2011)). "Indeed, Tennessee statutory law, the most salient source of Tennessee public policy, includes several statutes that offer protections for a minor's financial interests, even if that protection interferes with a parent's decision." *Id.* "The Tennessee Supreme Court previously characterized these statutes as 'plac[ing] the responsibility and burden upon the court to act for the minor.'" *Id.* at 650 (alteration in original) (quoting *Busby v. Massey*, 686 S.W.2d 60, 63 (Tenn. 1984)).

In the instant case, Code § 8.01-424(A) provides that "[i]n any action or suit wherein a person under a disability is a party, the court . . . shall have the power to approve and confirm a compromise . . . *if such compromise is deemed to be to the interest of the party*." (Emphasis added). The protective powers of the court are expressly codified. This Court finds that the state's parens patriae interest is a proper purpose. Thus, the first prong of the rational basis test is satisfied.

Under the second prong, the Court must determine whether the provisions of § 8.01-424 are rationally related to the state's parens patriae interest. The touchstone of this analysis is reasonableness. *See Hess*, 240 Va. at 55 ("[The] test is satisfied if the legislature could have reasonably concluded that the challenged [regulations] would promote a legitimate state purpose.").

Section 8.01-424(D) and (E) prescribe certain methods by which a court can direct payment of the settlement proceeds.  Under § 8.01-424(D), funds may be paid (1) into the court pursuant to § 8.01-600; (2) in the case of damage to the person or property of a minor, by investment in a college savings account comporting with the Commonwealth Savers Plan; (3) "to a duly qualified fiduciary of the person under a disability, after due inquiry as to the adequacy of the bond of such fiduciary"; (4) as provided in § 8.01-606 (for amounts not exceeding $50,000); or (5) into a periodic payment plan secured by a bond issued by an insurance company that is authorized to write bonds in the Commonwealth or authorized to do business in the Commonwealth and rated "A plus" (A+) or better by Best's Insurance Reports.

Section 8.01-424(E) states:

> Payments made under this section, in the case of damage to the person or property of a minor, may be made payable in the discretion of the court to the parent or guardian of the minor to be held in trust for the benefit of the minor.  Any such trust shall be subject to court approval and the court may provide for the termination of such trust at any time following attainment of majority which the court deems to be in the best interest of the minor.  In an order authorizing the trust or additions to an existing trust, the court may order that the trustee thereof be subject to the same duty to qualify in the clerk's office and to file an inventory and annual accountings with the commissioner of accounts as would apply to a testamentary trustee.

Thus, § 8.01-424 provides ample meaningful options for management of infant settlement proceeds and bears a reasonable relation to the state's parens patriae interest in preserving J.K.'s funds from dissipation.  Accordingly, there is a rational basis for the statute.

Permissible applications of a statute are reviewed for an abuse of discretion.  *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 253 (2017).  A court abuses its discretion when it fails to consider a relevant factor, considers or credits an improper factor, or commits a clear error of judgment.  *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013).  Here, the circuit court, acting pursuant to Code § 8.01-424(D)(1), ordered that the settlement proceeds be paid to the clerk of the court to be

- 13 -

held for J.K. until he reaches the age of majority. This ruling constitutes a proper exercise of the court's statutory authority to preserve J.K.'s funds, particularly in the absence of any proposal from the parents other than a request to eliminate judicial oversight altogether. The court therefore did not abuse its discretion.[7]

## CONCLUSION

The parents' devotion to their child is neither questioned nor diminished by this decision. Their claimed constitutional right, however, to control his settlement proceeds without court oversight, finds no support in either the federal or state Constitutions. Strict scrutiny does not apply, and their as-applied challenge fails, leaving no standing to press a facial challenge. Code § 8.01-424, reviewed under the rational basis standard, properly and in measured fashion, enables exercise of the Commonwealth's parens patriae power to preserve J.K.'s settlement until majority. Because the statute is rationally related to that purpose and was applied without abuse of discretion, the circuit court's judgment is affirmed.

*Affirmed*.

---

[7] The circuit court retains continuing jurisdiction over the funds held by the clerk on behalf of J.K. Therefore, this opinion does not foreclose the parents from seeking further relief in that forum as to how J.K.'s funds should be invested, a remedy they declined to pursue in the first instance. Setting aside the parents' constitutional grievance, on a practical level, the parents may be able to achieve their stated investment goal even while the funds remain in the safe hands of the clerk. The parents represented an intention to invest their child's funds in certificates of deposit under their own control to secure a higher rate of return, and they argued before this Court that the funds were currently earning only a minimal yield. The record does not indicate, however, that the parents requested the circuit court to direct the clerk to invest J.K.'s funds in certificates of deposit or time deposits, a course that would have achieved their stated objective of securing a greater return. Code § 8.01-424(D)(1) authorizes "[p]ayment of the sum into court as provided by § 8.01-600," which in subsection D provides that "[m]oneys held pursuant to this section shall be invested in certificates of deposit and time deposits . . . as ordered by the court."